```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| CITY OF BEATRICE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV3284 |
| | ) | |
| v. | ) | |
| | ) | |
| AQUILA, PEOPLES NATURAL GAS COMPANY, and UTILICORP UNITED, | ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) ) | |

INTRODUCTION

The defendants timely removed this case from the District Court of Gage County, Nebraska pursuant to 28 U.S.C § 1441. The defendants claim the plaintiff's suit arises under the laws of the United States in that the plaintiff seeks to rescind a land purchase contract made in accordance with and governed by the Federal Emergency Management Agency's (FEMA) floodway Hazard Mitigation Grant program, and that determining whether the plaintiff is entitled to its requested relief requires construing and applying federal law. The defendants allege "Plaintiff's right to relief depends on the construction and application of federal law and therefore necessarily raises a substantial and disputed issue of federal law." See Filing 1 (removal notice).

Pending before me is the plaintiff's motion for remand, filing 11. The plaintiff argues that its complaint raises state-law claims for fraudulent misrepresentation and concealment regarding the purchase of real estate located in the City of Beatrice, Gage County, Nebraska, and its complaint cites federal law only to explain the plaintiff's reason for purchasing the

property and its source of funding for the purchase.  Citing <u>Rosecrans v. William S. Lozier, Inc.</u>, 142 F.2d 118, 123 (8th Cir. 1944), it argues that "the mere references to federal law in Plaintiff's Complaint is insufficient to establish federal subject matter jurisdiction."  Filing 12 (plaintiff's brief at p. 5-6).  The plaintiff further states that although the defendant intends to claim the plaintiff's requested relief directly conflicts with 44 C.F.R. §206.434, such a claim raises only a defense to the plaintiff's well-pleaded complaint and, accordingly, provides no basis for exercising federal question subject matter jurisdiction.  Filing 12 (plaintiff's brief at p. 7-8).

For the reasons discussed below, I conclude this court lacks federal question jurisdiction and the case must be remanded to the District Court of Gage County, Nebraska.

THE PLEADINGS

The allegations of the plaintiff's complaint determine whether a case was properly removed.  As recently summarized in <u>Phipps v. F.D.I.C</u>., 417 F.3d 1006, 1010 (8th Cir. 2005):

> Removal based on federal question jurisdiction is usually governed by the "well-pleaded complaint" rule. <u>Krispin v. May Dep't Stores Co.</u>, 218 F.3d 919, 922 (8th Cir. 2000).  This rule provides that federal jurisdiction may be invoked "only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Id</u>.  The rule also "makes the plaintiff the master of the claim," allowing the plaintiff to "avoid federal jurisdiction by exclusive reliance on state law." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).

2

Phipps, 417 F.3d at 1010.  The allegations of the complaint existing at the time of removal control whether the plaintiff's claims are sufficient to establish federal question jurisdiction. Pullman Co. v. Jenkins, 305 U.S. 534, 537-538 (1939); Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969).

The plaintiff's state court complaint alleges:

In 1995 the plaintiff, City of Beatrice, ("city") participated in the floodway "Hazard Mitigation Grant" program initiated, funded and administered through FEMA, the purpose of which was to remove structures from the established floodway of that portion of the Big Blue River located within the City of Beatrice.  Filing 1 (complaint) ¶¶ 9-10.  The defendants owned and were willing to sell a parcel of property within the floodway which was suitable for purchase by the city under the Hazard Mitigation Grant program.  Filing 1 (complaint) ¶ 13.

The city and the defendants entered into a purchase agreement for the real estate on January 8, 1996.  Filing 1 (complaint) ¶ 14 and ex. A.  Under the terms of the purchase agreement, the city agreed to purchase the defendants' property for $39,200.00 subject to a final survey and contingent upon the availability of federal funds to finance the transaction.  Filing 1 (complaint), ex. A ¶ 2.  Thereafter, the property was appraised, and the total fair market value of the property was assessed to be $39,185.00; $37,505.00 for the improvements and $1,680.00 for the land.  Filing 1 (complaint) ¶ 16.

The defendants provided information for negotiating the sale and appraising the property.  However, although they knew hazardous wastes, chemicals, and environmental contaminants were

located on the property, and knew the city would rely on the information they provided regarding the property condition, the defendants misrepresented and/or failed to advise the city that the property was contaminated.  The defendants concealed or misrepresented the property's condition in order to induce the city to buy the property and thereby avoid their own direct financial responsibility for the contamination.  Filing 1 (complaint) ¶¶ 14, 18-20, 25-26.  In reliance on the defendants' disclosures concerning the property's condition, and to the city's detriment, the city bought the property for $39,200.00.  Thereafter, pursuant to the terms of the Floodway Hazard Mitigation program, the city removed the structures on the property.  Filing 1 (complaint) ¶ 24.

The deed transferring title to the city was filed of record on October 4, 1996.  Filing 1 (complaint) ¶ 17, 21, and ex. B.  The deed recites that funding for the purchase was provided pursuant to the Hazard Mitigation and Relocation Assistance Act of 1993, with the city authorized by FEMA to negotiate for the purchase of flood-damaged real estate and secure the transfer of such real estate to public ownership.  Filing 1 (complaint), ex. B at p. 1.  The deed states that the property acquired by the city under the FEMA program was for the city's use, and upon the express condition that "[t]he premises shall remain in public ownership."  Filing 1 (complaint), ex. B at p. 2.  The deed states that "[a]ny breach or threatened breach" of FEMA's conditions "may be enjoined upon application by the United States of America," and if the city fails to correct the violation of any condition within thirty days of receiving notice from FEMA, FEMA "shall have the option to repurchase [the property] for the sum of One Dollar ($1.00). . . ."  Filing 1 (complaint), ex. B at p. 2.

On May 18, 2005, the Environmental Protection Agency (EPA) notified the city that it is a "potentially responsible party" with respect to substantial costs and expenses related to contamination on the property.  Filing 1 (complaint) ¶ 22-23.  The city now seeks to rescind the 1996 property sale, and has tendered full return and reconveyance of the property to the defendants, with cancellation of the deed.  The city seeks recovery of the $1,680.00 it paid for the land, but it has abandoned any claim for amounts paid for the structures which were previously located on the property.  Filing 1 (complaint) ¶¶ 27-29.

LEGAL ANALYSIS

The defendants assert that though alleged as a claim for contract rescission under Nebraska common law, the plaintiff's lawsuit will "necessarily implicate issues of federal law which are actually disputed."  Filing 18 (defendants' brief) at p. 5.  The defendants argue that two federal issues are in dispute:  1) whether the relief the plaintiff seeks would contravene federal regulatory law and thereby usurp the government's interest in the property; and 2) whether the plaintiff may seek reimbursement of federal funds administered by FEMA for purchase of the property.  Filing 18 (defendants' brief) at p. 5.  The defendants have therefore removed the lawsuit to this forum.  See Filing 1 (removal notice).

"A defendant may remove a state law claim to federal court when the federal court would have had original jurisdiction if the suit originally had been filed there."  Phipps, 417 F.3d at 1010 (citing 28 U.S.C. § 1441(b)).  See also, City of Chicago v.

International College of Surgeons, 522 U.S. 156, 163 (1997). Defendants opposing remand bear the burden of establishing that federal subject matter jurisdiction exists over the plaintiff's case.  Green v. Ameritrade, Inc., 279 F.3d 590 (8th Cir. 2002). If the defendant proves that any claim within the plaintiffs' complaint supports federal question jurisdiction, the defendant may remove the entire case to federal court, including any alleged state-law claims arising from the same core of operative facts.  See 28 U.S.C. § 1367; City of Chicago, 522 U.S. at 164; Phipps, 417 F.3d at 1010 (citing Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996)).  However, all doubts as to the propriety of exercising federal jurisdiction over a removed case must be resolved in favor of remand.  Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997).

   The city's lawsuit against the defendants, and its motion for remand, present the "litigation-provoking problem" of whether federal question jurisdiction lies when a federal issue is involved in a state cause of action.  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809 (1986). Under the facts presented in Merrell Dow, the Court held that if Congress did not create a private remedy for violation of the federal statute cited in the plaintiff's complaint, the need to interpret or apply that federal statute to determine the merits of a state-law claim is insufficient to confer federal question jurisdiction.  Merrell Dow, 478 U.S. at 811-13.  The vast majority of cases "arising under the Constitution, laws, or treaties of the United States," (28 U.S.C. § 1331), are within the federal court's jurisdiction pursuant to the Merrell Dow analysis; that is, the plaintiff has pleaded a cause of action actually created by federal law.  Grable & Sons Metal Prods.,

Inc. v. Darue Eng'g & Mfg., 125 S.Ct. 2363, 2366-67 (2005); Sarantino v. American Airlines, Inc., 2005 WL 2406024, *4 (E.D. Mo. 2005).

Following Merrell Dow, a split in circuit decisions arose as to whether a federally created cause of action was a prerequisite to exercising federal question jurisdiction. The Court's recent decision in Grable resolved this split. Grable re-acknowledged the long-standing, though less frequently encountered, recognition of federal question jurisdiction when federal law does not create a cause of action, but the resolution of substantial, disputed questions of significant federal law determine a necessary element of a state-law claim. Grable, 125 S.Ct. at 2366 -2367 (2005); Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 12 (1983). As explained in Grable:

> [I]n certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. . . . The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. . . ."

Grable, 125 S.Ct. at 2366-67.

Thus, federal question jurisdiction arises when the plaintiff's complaint, standing alone, "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax, 463 U.S. at 27-28. However, the existence of a "federal issue" does not

necessarily vest the court with federal question jurisdiction. There is no "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." <u>Grable,</u> 125 S.Ct. at 2368.  The court may not refuse jurisdiction over a plaintiff's claims "simply because they appeared in state raiment."  <u>Grable</u>, 125 S.Ct. at 2368.  However, "federal issue" is not a password that opens the federal courts to any state action embracing a point of federal law.  <u>Grable</u>, 125 S.Ct. at 2368.  "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  <u>Grable</u>, 125 S.Ct. at 2368.

     Having reviewed the plaintiff's complaint and the parties' arguments, I conclude federal question jurisdiction is lacking. In reaching this decision, I specifically conclude that while federal regulatory law may (or may not) impact the remedy available to the city in its suit against the defendants, the application and meaning of federal law is not a central element of the city's lawsuit, nor does it raise a substantial, disputed issue of significant federal law.  I further conclude that under the facts presented, a dispute over a federally funded land purchase contract does not give rise to a federal case, particularly where the federal government was not a party to the contract at issue and the defendants were not intended third party beneficiaries of any agreement between the city and the federal government regarding the use of federal funds.

1. <u>Federal Jurisdiction where the Outcome of a Claim Depends on the Interpretation of Federal Law</u>.

Relying on <u>Grable</u>, the defendants claim the city's complaint raises a substantial and disputed federal question which must be determined by a federal forum.  In <u>Grable</u>, the IRS had seized the plaintiff's property and sold it to the defendant, with the proceeds used to satisfy the plaintiff's federal tax delinquency.  The plaintiff brought a quiet title action against the defendant, claiming the tax sale was defective because the IRS failed to give the plaintiff proper notice of the sale.  The plaintiff's right to recover therefore hinged on the interpretation of 26 U.S.C. § 6335 and the notice requirements delineated in that statute.

<u>Grable</u> held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction. . . ."  <u>Grable</u>, 125 S.Ct. at 2365.  "The Government has a strong interest in the 'prompt and certain collection of delinquent taxes. . . .'"  <u>Grable</u>, 125 S.Ct. at 2368 (quoting <u>United States v. Rodgers</u>, 461 U.S. 677, 709 (1983)).  Since the meaning of the federal notice statute was actually disputed, an essential element of the plaintiff's claim, and the only apparent legal and factual issue contested in the quiet title action, the meaning of the federal tax provision was "an important issue of federal law that sensibly belongs in a federal court."  <u>Grable</u>, 125 S.Ct. 2368.  "Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim."  <u>Grable</u>, 125 S.Ct. at 2371.

Grable does not, however, provide the "missing welcome mat" to a federal forum for every case where the interpretation of federal law is implicated. Grable, 125 S.Ct. 2370. Nonetheless, the defendants argue that, as in Grable, the city's complaint raises a sufficiently "substantial" and "disputed" question of federal law such that the court may exercise federal question jurisdiction. I disagree.

   a.   Lack of Substantial, Disputed Questions of Federal Law
        at the Heart of the Plaintiff's Claim.

The defendants argue that the federal government's interest in enforcing FEMA regulations for flood control projects is sufficiently substantial to confer federal question jurisdiction. As applied to the plaintiff's complaint, however, the FEMA regulations and their application to the plaintiff's claim for equitable rescission are not currently in dispute. Under Nebraska law:

> To maintain an action for rescission because of false representations the party seeking such relief must allege and prove what representations were made; that they were false and so known to be by the party charged with making them or else were made without knowledge as a positive statement of known fact; that the party seeking relief believed the representations to be true; and that he relied and acted upon them and was injured thereby.

Anson v. Grace, 174 Neb. 258, 263, 117 N.W.2d 529, 532 (1962).[1] Once a plaintiff seeking equitable rescission has proved these elements, the court must attempt to fashion a remedy which returns the parties to the status quo--the position they held immediately before they entered into the contract for sale and purchase of the property. Kracl v. Loseke, 236 Neb. 290, 303-304, 461 N.W.2d 67, 76 (1990).

The defendants argue that if the city prevails at trial, and the purchase contract is rescinded with the deed cancelled, ownership of the property will be revested in the defendants, nonpublic entities, in violation of the terms of FEMA's federally funded program, its regulatory scheme, and the terms of the deed. However, as between the city and the defendants, if the contract is rescinded and the deed cancelled, the covenants within that deed are also cancelled. If by obtaining the remedy of rescission, the city has violated some duty it owes to FEMA, that is a matter between the city and FEMA. Therefore, unlike the notice of tax sale issue in Grable, application of FEMA's conditions and regulations are not "essential element[s]" "at the heart" of the plaintiff's state-law claim. Grable, 125 S.Ct. at 2368.

As to these defendants, FEMA's restrictions on ownership will become relevant, if at all, only if the city first proves the elements of the misrepresentation or concealment claim as set

---

[1]Though the plaintiff's action is primarily alleged as a fraudulent concealment rather than a fraudulent misrepresentation case, the same elements apply. Under Nebraska law, "[W]here one has a duty to speak, but deliberately remains silent, his silence is equivalent to a false representation." In re Estate of Stephenson, 243 Neb. 890, 898-899, 503 N.W.2d 540, 547 (1993)(quoting State ex rel. NSBA v. Douglas, 227 Neb. 1, 25, 416 N.W.2d 515, 530 (1987)).

11

forth in its complaint. If it does so, then the question of whether and what remedy should be awarded by the court may arise. The defendants' argument raises a defense to the plaintiff's requested remedy, and based on this federal law defense, seeks to bring this case into a federal forum. However, the defendants' federal law defenses do not appear on the face of the plaintiff's well-pleaded complaint and cannot provide a basis for federal question jurisdiction. Iowa Management & Consultants, Inc. v. Sac & Fox Tribe of Mississippi in Iowa, 207 F.3d 488, 489 (8th Cir. 2000).

    b.    Lack of Substantial Federal Interest Sufficient to Justify Federal Question Jurisdiction over the Plaintiff's State-law Claims.

If resolution of a federal issue in a state forum could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest which warrants the exercise of federal question jurisdiction. Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996)(citing Martin v. Hunter's Lessee, 14 U.S. (1 Wheat) 304, 347-48 (1816)). The defendants argue the plaintiff's lawsuit will affect the federal government's substantial property rights--its "restrictive covenants" within the deed, (filing 18 (defendants' brief at 5-6)), and that it will undermine FEMA's regulatory scheme related to the Hazard Mitigation Grant program.

Where the United States is a contracting party, and the contract at issue in litigation was entered into pursuant to authority conferred by federal law, the necessity for uniformity of decision demands that federal law, rather than state law, control the contract's interpretation. United States v.

12

Seckinger, 397 U.S. 203 (1970).  However, in this case, although federal law is mentioned in the deed and purchase contract entered into between the city and the defendants, the federal government was not a party to either document, and the plaintiff's complaint raises no question regarding the liability of the United States or the responsibilities of the United States under the purchase contract or deed.  Miree, 433 U.S. at 28-29; Rosecrans, 142 F.2d at 124 (holding that even though the project underlying a contract dispute between private contractors was located on federal property to provide services for federal contractors, and was subject to the approval, confirmation and control of the United States, the dispute did not raise a federal question for removal purposes where the federal government was not a party to the lawsuit, and no judgment could be entered against it).

    Moreover, the defendants were not intended third party beneficiaries of any agreement between the city and the federal government regarding the use of federal funds.  Though the deed cites to FEMA's conditions on the city's use of the property, under the terms of the deed, any recourse for the city's violation of these conditions runs in favor of the federal government, not the defendants.  Should the city violate the conditions for receiving federal funds to purchase the property, under the terms of the deed, the United States is authorized to pursue an injunction and, upon thirty days notice, is afforded the option to repurchase the property for One Dollar ($1.00).  Filing 1 (complaint), ex. B at p. 2.  There is no language in the purchase contract or the deed withholding a reversionary interest in favor of the defendants should the land not be used in accordance with federal law, or contemplating any remedy

13

available to the defendants if the city violates federal regulatory law regarding use of the land.

The city, not the federal government, is the current owner of the land at issue. Though the federal government may have placed conditions on the city's use and continued ownership of the property, and those conditions may be violated if the city prevails against the defendants, if that occurs, the federal government may then pursue recovery from the city under the terms of the deed and any relevant federal regulations. Whatever suit may arise between the city and the federal government is not before me, is not ripe for adjudication, and cannot provide a basis for federal question jurisdiction.

The defendants cite Grable as supporting their claim that this case must be litigated in a federal forum to afford uniform interpretations in applying and enforcing the federal Hazard Mitigation Grant program. Filing 18 (defendants' brief) at 7. However, the plaintiff's complaint does not raise a claim requiring interpretation of a federal tax statute, with the associated risk that divergent interpretations of the law could undermine federal tax collection processes nationwide. Grable, 125 S.Ct. 2368. The federal interest at issue in this case does not approach the magnitude of interest at stake in Grable, and it is not substantial enough to warrant exercising federal question jurisdiction.

The claims raised within the plaintiff's complaint do not fall within the "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law." Sarantino,

2005 WL 2406024, *4 (quoting Bhagwanani v. Howard University, 355 F. Supp. 2d 294, 298 (D.D.C. 2005)).  See e.g. Merrell Dow, 478 U.S. at 814 (holding that although proving a violation of the federal Food, Drug and Cosmetic Act was a necessary element of the plaintiff's state-law tort claim, a federal question was not raised); Miree v. DeKalb County, Ga., 433 U.S. 25 (1977)(finding that the FAA's substantial interest in regulating aircraft travel and promoting air travel safety does not create a federal claim, particularly where there has been no showing that federal operations will be burdened or subjected to uncertainty by variant state-law interpretations or inadequately protected by state law); Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285 (11th Cir. 2004)(holding that although the plaintiff needed to prove ownership of a trademark in accordance with federal law to prove he was fraudulently induced to surrender it, his state-law claim did not raise a disputed question of federal law sufficient to confer removal jurisdiction); Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998)(finding removal jurisdiction lacking because proof of a violation of the Americans with Disabilities Act, although a necessary element of the plaintiff's state-law discrimination claim, was an insufficiently substantial federal question); City of Huntsville v. City of Madison, 24 F.3d 169, 170 (11th Cir. 1994)(holding that the need to interpret § 13 of the TVA Act does not present a substantial question of federal law that would confer federal question jurisdiction over a removed state contract action).

   2.   Federal Jurisdiction Based on Federal Funding.

The defendants further argue that the plaintiff's complaint raises substantial federal issues because the funds used by the city to purchase the defendants' property were federal funds, and the city seeks a partial reimbursement of those funds.  Citing

Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital, 415 F.3d 145 (1st Cir. 2005) and In re Zyprexa Products Liability Litigation, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the defendants contend that since federal funds were used to purchase the defendants' property, and federal law is referred to in the deed granting ownership of the property to the city, the court has federal question jurisdiction over any action to rescind the contract and, accordingly, the deed. Filing 18 (defendants' brief) at 6-7.  I disagree.

In Municipality of San Juan, the municipality had entered into a trust deed with the defendant which designated the defendant, as trustee, to administer HUD financing received by the municipality.  The trust deed contained a clause requiring all disputes between the municipality and the bank to be arbitrated.  The municipality terminated the trust agreement and sought reimbursement of all unused federal funds, alleging the defendant had improperly used federal money and had failed to comply with regulations governing the use of federal funds.  When the defendant refused to return the unused federal funds, suit was filed in federal court to compel arbitration.  In addressing the initial question of whether subject matter jurisdiction existed, the court noted that since the propriety of the defendant's conduct "turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies," federal jurisdiction existed.  Municipality of San Juan, 415 F.3d at 148 n. 6.

In In re Zyprexa, the State of Louisiana sued Eli Lilly to recover reimbursement of payments made with state and federal funds in Medicaid programs.  The State alleged the defendants

16

violated federal law and federal regulations by marketing Zyprexa for pediatric and other off-label uses, and accordingly was not entitled to government-funded payments made for unauthorized use of Zyprexa.  The court held that the substantial federal funding provisions, and the allegations that defendant violated federal law through improper off-label use, presented a core of substantial federally oriented issues which raised federal question jurisdiction.  In re Zyprexa, 375 F. Supp. 2d at 172.

Unlike Municipality of San Juan and In re Zyprexa, the city's complaint does not allege the defendants violated federal law and thereby obtained federal funds, or that the defendants failed to comply with federal regulations in administering federal funds.  The plaintiff's complaint alleges a common law claim to rescind a land purchase contract because the defendants allegedly concealed the existence of hazardous wastes on the land and, but for this concealment, the city would not have purchased the property.

I conclude that "the federal funds lurking in the background of this case cannot serve as an independent basis for establishing jurisdiction."  Transit Exp., Inc. v. Ettinger, 246 F.3d 1018, 1026 (7th Cir. 2001).  Where the United States is neither a party to the contract at issue nor a necessary party in the city's lawsuit, the fact that the contract between the City of Beatrice and the defendants was federally funded and entered into in furtherance of a FEMA-regulated flood control project is insufficient to confer federal question jurisdiction over the city's case.  See e.g. Miree, 433 U.S. 25 (Where an injured passenger brought a contract action against the county claiming the county had breached its agreement with the FAA to restrict land use near the airport in exchange for federal airport

17

development grant money, the suit was between private parties and federal question jurisdiction was lacking.); Transit Exp., 246 F.3d at 1024 (Although the FTA provided funding to Wisconsin to provide transportation services for elderly and disabled persons, the mere existence of a federal regulatory framework governing the use of these federal funds did not convey federal jurisdiction over a dispute between Wisconsin and a transport company over bid eligibility requirements--such claims being ancillary to the federal government's interest.); U.S. for Use of General Elec. Supply Co., a Div. of General Elec. Co. v. U.S. Fidelity & Guar. Co., 11 F.3d 577, 582 (6th Cir. 1993)(The federal court lacked jurisdiction over a contract dispute between a contractor and subcontractor for construction of a city waste-water treatment project where the United States did not sign the construction contracts, did not hold title to the property at issue, and although as a condition of funding, the planning, bidding, contracting, and construction was subject to FmHA approval, FmHA's only connection to the project itself was as a funding source.); City Nat. Bank of West Virginia v. Mountaineer Capital, LP, 2005 WL 3098923, *1 (S.D. W.Va. 2005)(State-law claims, including claims of fraudulent misrepresentation and breach of contract, did not implicate significant issues of federal law as set forth in the Small Business Investment Act and its federal regulations such that the court could exercise federal question jurisdiction; and further noting that any federal issues would be implicated by the defendants' defense.)

Finally, many federal agencies enact regulatory schemes which induce state and local action in exchange for federal funding. For most, if not all, there are conditions to receipt of the funding, or "strings attached." Allowing this case, and

others like it, to remain in federal court under the auspices that a potential violation of a federal condition to funding justifies federal question jurisdiction would open the federal courts to a "tremendous number of cases" and create "a potentially enormous shift of traditionally state cases into federal courts," (<u>Grable</u>, 125 S.Ct. at 2370-71), thus "disturbing any congressionally approved balance of federal and state judicial responsibilities."  <u>Grable</u>, 125 S.Ct. at 2368.

    IT THEREFORE HEREBY IS ORDERED:  The plaintiffs' Motion for Remand, filing 11, is granted, and this case is remanded to the District Court of Gage County, Nebraska.

    DATED this 25th day of January, 2006.

                                          BY THE COURT:

                                          s/ *David L. Piester*
                                          David L. Piester
                                          United States Magistrate Judge